## Com. ex rel. Neal v. Shields et al. Com. ex rel. Neal v. Shields.

*Corporations — Corporate elections — Meetings — Quorum — Majority in interest—Stock—By-laws—Acts of April 29, 1874, and May 14, 1891.*

1. If no special rule exists, it requires a majority of the members of any constituted body of persons, whose presence at or participation in a meeting is required to constitute a quorum, to be present at such meeting in order to render its proceedings valid or to enable it to transact business legally.

2. Where the stock of a corporation consists of 500 shares, and the by-laws provide that a "majority in interest shall constitute a quorum," and that "each share of stock shall entitle the holder thereof to one vote," provided that he has held such stock for thirty days prior to the annual meeting, a majority of all the stock, that is, 251 shares, is necessary for a quorum.

3. In such case, where it appears that 106 shares had not been held by their owners for thirty days prior to the meeting, it cannot be successfully contended that, as only 394 shares were eligible for voting purposes, 214 shares present constituted a quorum, and that the election of directors who received 212 votes was legal.

Acts of April 29, 1874, P. L. 73, and May 14, 1891, P. L. 61, considered.

Suggestions for *quo warranto.* C. P. Indiana Co., March T., 1923, Nos. 196 and 197.

*D. B. Taylor* and *James M. Mack,* for relator.

*Peelor & Feit* and *Cunningham & Fisher,* for respondents.

LANGHAM, P. J., March 16, 1923.—On Jan. 27, 1923, W. L. Neal, relator, by suggestion filed, caused a writ of *quo warranto* to issue at No. 196, March Term, 1923, in the Court of Common Pleas of Indiana County, against Dr. W. L. Shields, Dr. T. R. Boden, S. F. Boden, Joseph H. Stern and A. G. Stewart, to inquire by what authority they assumed and exercised, and do now assume, exercise and enjoy, the office of Directors of the Farmers' and Miners' Bank of Jacksonville, located in Indiana County; and also caused a writ of *quo warranto* to issue at No. 197, March Term, 1923, against Dr. W. L. Shields, to inquire by what authority he assumed and exercised, and does now assume, exercise and enjoy, the office of President of the Board of Directors of said Farmers' and Miners' Bank of Jacksonville. The respondents in both cases filed answer thereto Feb. 23, 1923.

For the purpose of this discussion, we find from the pleadings, *inter alia,* the following admitted facts:

1. That the Farmers' and Miners' Bank of Jacksonville is a corporation created by authority of the laws of the State of Pennsylvania, with a capital stock of 500 shares, and doing business in the Borough of Jacksonville, Indiana County.

2. That section 1 of article I of the by-laws provides, *inter alia:* "The business of said bank shall be managed and conducted by a board of eleven directors," &c.; that section 2 of article II of the by-laws of said bank, regulating the meetings of stockholders, provides: "A majority in interest shall constitute a quorum;" and that section 2 of article X of said by-laws provides: "No stockholder shall be entitled to vote at the annual meeting of the stockholders unless his stock shall have been held by him in his own right for at least thirty days previous to the date of such meeting."

3. That the by-laws fix the second Tuesday of January as the date for holding the annual meeting of stockholders, and that W. L. Neal, the relator, on the second Tuesday, 1923, was a stockholder and owner in his own right of 213 shares of the capital stock of said bank, and was a member of the board of directors and its legally elected and qualified and acting president.

4. That on the second Tuesday of January, 1923, the said Farmers' and Miners' Bank of Jacksonville had issued and outstanding 500 shares of its

4 D. & C.

capital stock, the entire amount of its authorization, of which 106 shares were not eligible for voting purposes "at the annual meeting of the stockholders," because not held by owner thereof "in his own right for at least thirty days previous to the date of such meeting."

5. That on the second Tuesday of January, 1923, W. L. Neal, the relator, was not present in person or by proxy at the annual stockholders' meeting, of which due notice had been given, and only 214 shares of the capital stock of said bank were represented, of which 213 shares participated in the election of eleven directors, the five respondents named at No. 196, March Term, 1923, were sworn and assumed the office of directors and proceeded to elect W. L. Shields, respondent named at No. 197, March Term, 1923, as president of the board of directors, who assumed the duties thereof.

### Discussion.

Under the foregoing admitted facts, the question of law for this court to determine is, Was there a quorum represented at the organization of the stockholders' annual meeting held the second Tuesday of January, 1923?

If there was a legally constituted quorum at the organization of the stockholders' meeting and a majority thereof voted for the directors, respondents named at No. 196, March Term, 1923, then the writ should be dismissed, otherwise the *quo warranto* should be sustained and the respondents removed or ousted from exercising the duties and prerogatives of directors of said bank. It follows that the proceedings at No. 197, March Term, 1923, must stand or fall upon the determination of the case at No. 196, March Term, 1923.

It is well understood that, if no special rule exists, it requires a majority of the members of any constituted body of persons whose presence at or participation in a meeting is required to constitute a quorum [to be present at such meeting] in order to render its proceedings valid or to enable it to transact business legally.

In the case at bar, as heretofore indicated, we must determine whether there was a legal quorum present at the annual meeting held the second Tuesday of January, 1923, held at the banking rooms of the Farmers' and Miners' Bank of Jacksonville, for the purpose of electing a board of directors.

Section 5 of the Act of April 29, 1874, P. L. 73, as amended by the Act of May 14, 1891, P. L. 61, reads as follows:

"Section 5. The by-laws of every corporation created under the provisions of this statute, or accepting the same, shall be deemed and taken to be its law, subordinate to this statute, the charter of the same, the Constitution and laws of this Commonwealth and the Constitution of the United States. . . . The directors or trustees shall be chosen annually by the stockholders or members at the time fixed by the by-laws, and shall hold their office until others are chosen and qualified in their stead," &c.

Section 6 of the Act of April 29, 1874, P. L. 73, provides: "Every such corporation may determine, by its by-laws, what number of stockholders shall attend, either in person or by proxy, or what number of shares or amount of interest shall be represented at any meeting to constitute a quorum. If the quorum is not so determined, a majority in interest of the stockholders shall constitute a quorum."

In the case at bar, section 2 of article II of the by-laws provides: "A majority in interest shall constitute a quorum;" and section 5 of article II provides: "At any stockholders' meeting, each share of stock shall entitle the holder thereof to one vote in person or by proxy."

It will be observed that there is no special rule controlling what constitutes a quorum, other than that provided by the by-laws, to wit, "A majority in interest;" and if a stockholder is entitled to one vote for each share of stock owned in his own right, providing he has held such stock for thirty days prior to the annual meeting, the number of stockholders present at the meeting has nothing to do with a legally constituted quorum. The quorum may be present either in person or by proxy. It will be observed that the by-law fixing the quorum follows the exact language of the statute. The respondents at No. 196, March Term, 1923, rely upon the fact that 106 shares of the 500 shares outstanding were not entitled to vote after said shares had been transferred within thirty days prior to the date of the annual election, and that this changed the number of shares necessary to constitute a quorum. In other words, the respondents claim that, inasmuch as only 394 shares were eligible for voting purposes, that the 214 shares present constituted a quorum, and, therefore, the election of the five directors who received 212 votes were legally elected.

It must be kept in mind that these 106 shares, admittedly ineligible for voting purposes, were not present in person or by proxy at the organization or at any time during the "annual" meeting of the stockholders in question, but *were* shares of the capital stock of the bank *for all other purposes except voting at a stockholders' "annual" meeting*. This was an "annual" meeting of the stockholders for the purpose of electing members of the board of directors. Then, how can it be said that less than a majority of the shares issued and outstanding would constitute "a majority in interest?" The law, and the by-laws, which are a part of the law, specifically state that "a majority in interest shall constitute a quorum." If the relator or any other person had bought up 400 shares of the capital stock of this bank, instead of 106 shares, within thirty days of the "annual meeting" of the stockholders, and stayed away from the meeting, could it be said that the remaining 100 shares could have gone ahead and elected a board of directors, provided fifty-one shares of the stock had been represented in *person* or by proxy? Under the restriction of the law and the by-laws, that would certainly not be "a majority in interest," and it takes such a majority to constitute a quorum in this case.

Admittedly, only 214 shares were represented at the organization of this meeting, and only 212 shares participated in the election of directors. In our judgment, that was not enough. At least 251 shares should have been represented in person or by proxy before a legal organization could be effected. In other words, no quorum as required by law in this particular case was present.

The respondents take the position that the 106 shares of stock, not eligible for voting purposes by reason of section 2 of article X, should be deducted from the entire outstanding stock in reckoning "a majority in interest" for the purpose of ascertaining a quorum. In this position we cannot concur. In our judgment, that particular by-law limits the voting power only of the corporation, and in no way affects the quorum as defined in section 2 of article II, heretofore cited. If section 2 of article X had been intended to limit or in any way modify the requisites of a quorum in the event of certain shares changing hands within thirty days of the "annual" meeting, it should have so stated. As the by-laws stand, we cannot read any modification into them that would change or limit the plain, clear and unambiguous language defining what shall constitute a quorum for this corporation to do business.

On the question of purpose or motive of the relator in withholding "his

4·D. & C.

own stock, lawfully entitled to vote," we feel that we are not concerned in this particular form of proceeding.

It is conceded by both sides that the question here raised under a similar state of facts has not been decided by our appellate courts. In support of what we have said and cited, we refer to 14 Corpus Juris, 897, on the question of "majority in interest."

"Charter or statutory provision or provisions in by-laws requiring the presence for the purpose of a quorum, or the vote or assent of a majority of the stockholders, or of two-thirds of them, etc., are generally construed as meaning a majority or two-thirds of the stockholders in interest and not in numbers, unless a contrary intention appears from the language or is to be inferred from the nature and purposes of the corporation."

On the question of quorum, see 14 Corpus Juris, § 1377, page 895: "To constitute a valid corporate meeting, a quorum must be present, and action of the stockholders or members at a meeting at which less than the required number of members are present, or less than the required amount of stock is represented, is void."

Also, Craig v. First Presbyterian Church, 88 Pa. 42, 47: "It may be asked, however, what is meant by the majority? Does it mean the concurrence of the major part of those who happen to be present at a regular corporate meeting, or does it mean a concurrence of a majority of the whole body? There is this distinction between a corporate act to be done by a definite number of persons and one to be performed by an indefinite number. In the first case, it is to be observed that a majority is necessary to constitute a quorum, and that no act can be done unless a majority be present."

In keeping with the foregoing opinion, a decree of court will be made in each case, and it is hereby suggested that at as early a date as possible a special meeting of the stockholders of said corporation for the purpose of electing directors shall be called by the persons declared to be the lawful directors at the meeting of the stockholders the second Tuesday of January, 1922, in accordance with the by-laws of said corporation.

### Order and decree of court.

And now, March 16, 1923, the writ of quo warranto at No. 196, March Term, 1923, sustained and made absolute, and it is adjudged and decreed that the election held for the choice of Directors of the Farmers' and Miners' Bank of Jacksonville, on the second Tuesday of January, 1923, was unlawful, and the defendants, W. L. Shields, T. R. Boden, S. F. Boden, Joseph H. Stern and A. G. Stewart, were not elected directors of said corporation according to law, and that judgment be entered in favor of the Commonwealth, and that said defendants be ousted and altogether excluded from said offices, franchises and privileges of said corporation.

And it is further adjudged that a perpetual injunction issue, restraining the defendants from exercising, or claiming to exercise, the said offices of directors of said corporation, from acting thereon and from retaining the custody of the books, papers and seal of said corporation from the persons hereby declared to be the directors thereof.

It is further ordered and decreed that W. L. Neal and his associates, who were lawfully elected directors of said corporation on the second Tuesday of January, 1922, are the duly elected directors of said corporation, and shall hold possession of the said offices until others shall be elected in their stead according to law and the regulations of said corporation.

Com. ex rel. Neal v. Shields et al.   Com. ex rel. Neal v. Shields.

It is further adjudged that the defendants pay the costs of this proceeding. And now, March 16, 1923, the writ of *quo warranto* at No. 197, March Term, 1923, sustained and made absolute, and it is adjudged and decreed that the election of president by the Directors of the Farmers' and Miners' Bank of Jacksonville, on the second Tuesday of January, 1923, was unlawful, and the defendant, W. L. Shields, was not legally elected president of said corporation, and that judgment be entered in favor of the Commonwealth, and that said defendant be ousted and altogether excluded from said office, franchises and privileges of said corporation.

And it is further adjudged that a perpetual injunction issue, restraining the defendant from exercising, or claiming to exercise, the said office of president of said corporation, from acting therein and from retaining the custody of the books, papers and seal of said corporation from the person hereby declared to be the president thereof.

It is further ordered and decreed that W. L. Neal, who was lawfully elected president of said corporation on the second Tuesday of January, 1922, is the duly elected president of said corporation, and shall hold possession of the said office until another shall be elected in his stead according to law and the regulations of said corporation.

It is further adjudged that the defendant pay the costs of this proceeding.

From James L. Jack, Indiana, Pa.